## PARROTT & CO. v. UNITED STATES.

### No. 11168.

Circuit Court of Appeals, Ninth Circuit.

Aug. 14, 1946.

Frank L. Lawrence, George R. Tuttle, and Walter I. Carpeneti, all of San Francisco, Cal., for appellant.

Sewall Key, Acting Asst. Atty. Gen., J. Louis Monarch, Benjamin H. Pester and Eugene E. Beyer, Sp. Assts. to the Atty. Gen., and Frank J. Hennessy, U. S. Atty., and William E. Licking, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before DENMAN, HEALY and BONE, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from the dismissal in the District Court of appellant's complaint under the Tucker Act, 28 U.S.C.A. § 41 (20), for a refund of taxes levied upon the appellant in respect to bottled rum imported by the appellant from the Virgin Islands. We do not have the aid of an opinion of the District Court in determining upon what grounds it disposed of the seven issues tendered by the complaint and necessarily decided in its dismissal.

The taxes collected are on the rum as distilled spirits and on the rum as rectified. As later seen, the rectification tax is on the rum and not on the occupation of rectifier.

As to both, the taxes were assessed pursuant to Section 3350 of the Internal Revenue Code enacted in 1918, 26 U.S.C.A. Int.Rev.Code, § 3350, providing

"(a) Taxes imposed in the United States. Except as provided in section 3123, there shall be levied, collected, and paid in the United States, upon articles coming into the United States from the Virgin Islands, a tax equal to the internal revenue tax imposed in the United States upon like articles of domestic manufacture.

"(b) Exemption From Tax Imposed in the Virgin Islands. Such articles shipped from such islands into the United States shall be exempt from the payment of any tax imposed by the internal revenue laws of such islands."

Appellant contends that this Act is not applicable to the importations from the Virgin Islands and that the taxes should have been assessed under the provisions of the Virgin Islands Act of March 3, 1917, c. 171, § 3, 39 Stat. 1133, 48 U.S.C.A. § 1394.[1]

Appellant bases its contention on the fact that Section 3350 does not expressly repeal Section 3 of the Virgin Islands Act, hence that earlier Act applies. We do not agree. Section 3350 clearly im-

[1] "There shall be levied, collected and paid upon all articles coming into the United States or its possessions from the Virgin Islands the rates of duty and internal-revenue taxes which are required to be levied, collected, and paid upon like articles imported from foreign countries: Provided, That all articles, the growth or product of, or manufactured in, such islands, from materials the growth or product of such islands or of the United States, or of both, or which do not contain foreign materials to the value of more than 20 per centum of their total value, upon which no drawback of customs duties has been allowed therein, coming into the United States from such islands shall be admitted free of duty."

poses the tax. If Section 3350 does not repeal the earlier Act, the rum is also taxable under that Act, a question unnecessary for us to decide.

We affirm the dismissal of the complaint insofar as it seeks a refund of the tax because not assessed under the provisions of the Virgin Islands Act.

■ Appellant contends as to both the rectification tax and the distilled spirits tax that because the Treasury did not attempt to enforce either until 1937, when in T.D. 4770, 1937-2 Cum.Bull. 568 it interpreted the Act of 1918 as requiring enforcement, Congress' inactivity indicates that it was satisfied with the Treasury's conduct and did not intend the Act to be applied. We do not agree. Such a contention ignores the fact that Congress as yet has done nothing altering the 1918 Act, and that in 1918 the war prohibition act, 40 Stat. 1046, and thereafter the Volstead Act, 27 U.S.C.A. § 1 et seq., prevented until 1933 the importation of any such bottled rum.

■ Within four years thereafter the Commissioner issued his interpretation under which the collection began to be made. Presumptions of Congressional intent which are derived from acquiescence in administrative inactivity must be measured by Congress' knowledge of the slowness of the administrative process and its realization that four years of silence might well be consumed by the Treasury in preparing an interpretation or regulation.

■ Rectification Tax. Appellant contends that the provision of Section 3350 that the tax is assessable as on "like articles of domestic manufacture" is not applicable to rectified Virgin Islands rum because none of the provisions supervising rectification in the United States is enforcible against rectifiers in the Islands. We do not agree. The tax is upon the article because it is rectified. It is none the less rectified because not so treated under federal supervision.

The rum when imported was of less than 100 proof. Appellant claims that none of the several processes alleged in the complaint, to which different portions of the rum had been subject, constitutes rectification. Section 2800 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 2800, imposes a tax of 30¢ a wine gallon on distilled spirits of less than 100 proof if they have been rectified by one who "is a rectifier within the meaning of Section 3254(g) of that Code, 26 U.S.C.A. Int.Rev. Code, § 3254(g).[2] Section 3254(g) defines a rectifier as "(g) Rectifier. Every person who rectifies, purifies, or refines distilled spirits or wines by any process other than by original and continuous distillation from mash, wort, or wash, through continuous closed vessels and pipes, until the manufacture thereof is complete * * * and every person who, without rectifying, purifying, or refining distilled spirits, shall, by mixing such spirits, wine, or other liquor with any material, manufacture any spurious, imitation, or compound liquors for sale, under the name of whisky, brandy, gin, rum, wine, spirits, cordials, or wine bitters, or any other name, shall be regarded as a rectifier, and as being engaged in the business of rectifying: * * * *".

■ The complaint alleges five different formulae under which the rum was treated after distillation and before bottling. Appellant claims that under Treasury Regulation 188.45 none of these formulae constitutes rectification. That regulation is not applicable since it concerns only distilled liquors bottled in bond, 188.1 under 26 U.S.C.A. Int.Rev.Code, § 2904(a), and only to liquors of over 100 proof. The bottled rum taxed was 86 proof.

In formula 7 the rum has added to it sugar caramel as flavoring. Here is a rectifying within Section 3254(g) by a specific addition of a flavor after the process of distillation is complete. Likewise formulae 11 and 12 describe rectification within that statute. These provide that after distillation is complete, carbon is added to gather certain substances and then filtered out.

Appellant claims formulae 2 and 10 do

[2] The earlier legislation created a tax on the occupation of rectifier. 15 Stat. 130, 150 R.S. § 3244.

not constitute rectification within Treasury Regulation 190.351 of which the pertinent portions are "§ 190.351. Mingling of different spirits prohibited. Different kinds of spirits may not be mixed together at a rectifying plant, except in the process of rectification. Spirits of the same composition, produced at approximately the same proof by the same distiller at the same distillery and differing in age [certain specified amounts] * * * packaged in the same kind of cooperage and stored under the same conditions, will be presumed to be homogeneous, and may be dumped together for convenience in bottling * * * nor may spirits which have been stored in different kinds of cooperage or under different conditions and are of different composition or character be mixed together for bottling without rectification."

■ Formula 2 is alleged to be a rum made from sugar cane mixed with rum made from molasses. These are not "spirits of the same composition" but are "different kinds of spirits."

■ Under formula 10 the rum made from molasses is placed into "newly charred oak barrels, and into reused oak barrels, from which all char has been removed, for ageing." After ageing, the rum from the "reused cooperage is mixed with rum from the new charred cooperage so as to insure the proper color." Here the rum is not "packaged in the same kind of cooperage" necessary for "homogeneous" as distinguished from "different kinds of spirits." As to the last sentence of 190.351 above quoted, the test of the succeeding Regulation 190.352 respecting the different color produced by formula 10 is determinative. That regulation provides "§ 190.352. Testing of spirits dumped together for bottling. Whenever there is doubt as to whether the dumping together of the contents of two or more containers of spirits constitutes rectification, a sample of each component of the proposed mixture should be compared with a sample of the final mixture by chemical analysis and by taste, color, and other tests to ascertain whether the mixture is homogeneous with each of its component parts * * *."

We affirm the dismissal of the complaint insofar as it seeks a refund of the rectification tax alleged therein to have been paid.

Distilled Spirits Tax. This collected tax, of part of which the complaint seeks a refund, was upon rum alleged to be distilled at more than 100 proof, and later, by the addition of water, was reduced to less than 100 proof, at which lesser proof it was bottled and imported. It was taxed as if it had been distilled at less than 100 proof.

■ This is the method of taxing if the rum had been imported from any place other than the Virgin Islands, with which we had no tariff treaty, Section 2800(a) (1) providing that the tax on imported rum of $2.25 on each proof gallon or wine gallon when below proof is "to be paid by the * * * importer when withdrawn from bond." In our opinion it is error to have taxed the Virgin Islands rum as if it were an importation and that the cases cited respecting ordinary imported distilled liquors have no application. Section 2800 (a) (4) (B) states that the tax is controlled by Section 3350, supra, specifically providing for rum "coming into the United States from the Virgin Islands, a tax equal to the internal revenue tax imposed in the United States upon like articles of domestic manufacture."

■ The "bond" from which the importer would remove the rum is the importer's bonded warehouse. It is entirely different from the bonded area of a United States distillery from which the rum would have to be withdrawn for the rectification which appellee contended and we have held in fact occurred in the Virgin Islands. The distiller's tax as to rum made in the United States attaches at the instant the distilled "substance is in existence." 2800(c). St. Paul Mercury Indemnity Co. v. United States, 9 Cir., 156 F.2d 425.

■ The rums here in issue being distilled in the Virgin Islands were without any requirement that they remain in a federal bonded area until the tax is paid. Congress well knew this when it provided in Section 3350 that the rum was to be taxed

as if produced in the United States. It must have intended that the tax would be the equivalent of that provided by Section 2800(b) (2) for distilled liquors not deposited in bonded warehouses, that is the amount which would have attached as soon as the distillation was complete—here because above proof at the proof gallon rate. Cf. St. Paul Mercury Indemnity Co. v. United States, supra.

■ Appellee contends the method of taxation on distilled spirit it here used is required by Treasury Regulations 24 (1941 edition), Section 180; 26 1941 Supp. C. F.R. 2402, effective July 16, 1941. Prior to this date all appellant's rum "came into" the United States, at which time, under § 3350, the tax became due. Cf. Meredith v. United States, 13 Pet. 486, 493, 10 L.Ed. 258.

Section 180 sets forth, as controlling after that date, a procedure for the Virgin Islands similar to that in the continental United States for the determination of the proof of distilled spirits by a federal guager at the time of distillation. Appellee says that since appellant did not comply with these regulations in the Virgin Islands it must under § 180.134(a) [3] pay the tax based upon the strength of the rum upon entry into the United States.

It is obvious that this regulation was not intended to apply and could not apply to the rums here in question, made when there was no Treasury guager created for the Virgin Islands. By the express terms of § 180.2 of the regulation, the prior regulations controlling such importation were continued in force.[4]

We reverse the judgment of dismissal of the District Court insofar as it determined that appellant's rum could not be liable for the distilled spirits tax levied on its proof gallonage, and remand the case to the district court for its consideration of the issue tendered by the complaint that appellant is entitled to a refund of a part of the distilled spirits tax paid by it because assessed at a wine gallon rate instead of a proof gallon rate. The burden of proof is on appellant to show the proof gallons of the distilled rum required to make bottled rum as imported, including the rum evaporated or otherwise lost between the distillation and the bottling.

[3] "* * * If the certificate does not bear the certification of the insular guager and is not accompanied by a report of guage made by an insular guager showing the proof of the spirits at the time of their withdrawal from the insular bonded warehouse, the proof of the spirits at the time of reguage or inspection at the port of entry in the United States will be the basis for determining the internal revenue tax due thereon, i. e., if the spirits are less than 100 degrees in proof, the distilled spirits tax will be collected on the wine gallons, whereas if the spirits are 100 degrees or more in proof, the distilled spirits tax will be collected on the proof gallons. The rectification tax on taxable rectified spirits will be collected on the proof gallons contained in the consignment regardless of the proof of the spirits at the time of their withdrawal from the insular bonded warehouse or at the time of their entry into the United States."

[4] "§ 180.2. Effective date. The regulations in this part shall, on and after the ninetieth day following the date of approval as to Puerto Rico and the Philippine Islands and the thirtieth day as to the Virgin Islands, supersede all prior regulations relating to alcoholic products coming into the United States from Puerto Rico, the Virgin Islands, and the Philippine Islands to the extent that such prior regulations are inconsistent herewith. All prior regulations which are inconsistent herewith shall remain in force and effect for the assessment and collection of all such taxes and penalties, for the imposition of all penalties, civil and criminal, and for the enforcement of all forfeitures which have accrued thereunder."